UNITED STATES DISTRICTCOURT
EASTERN DISTRICT OF NEW YORK
 ------------------------------------------------------
CELIA HENRY,

                Plaintiff,

-against-

NASSAU HEALTH CARE CORPORATION,
RICHARD PERROTTI, in his official and individual
capacity, and GARY BIE, in his official and
individual capacity,


                Defendants.

----------------------------------------------------------X

**MEMORANDUM AND ORDER**
08-CV-2398(DRH)(GRB)

**A P P E A R A N C E S :**

**For the Plaintiff:**
**LAW OFFICES OF FREDERICK K. BREWINGTON**
556 Peninsula Blvd.
Hempstead, New York 11550
By:   Frederick K. Brewington, Esq.

**For the Defendants:**
**CLIFTON BUDD & DeMARIA, LLP**
420 Lexington Avenue
New York, New York 10170
By:   Sheryl Ann Orwel, Esq.

**VENABLE LLP**
Rockefeller Center
1270 Avenue of the Americas, 24th Floor
New York, NY 10020
By:   Brian J. Clark, Esq.

**HURLEY, Senior District Judge:**

Plaintiff, Celia Henry ("Henry" or "plaintiff") commenced this action against defendants Nassau Health Care Corporation ("NHCC"), Richard Perrotti ("Perrotti"), and Gary Bie ("Bie") (collectively "defendants") asserting claims of race-based discrimination and retaliatory employment practices in violation of Title VII of 42 U.S.C. § 2000(e) (Title VII), 42 U.S.C. § 1983, 42 U.S.C. § 1981, and New York's Human Rights Law, Executive Law § 296.  (Sec. Am. Compl. ¶ 1, as Defs.' Ex. A.)  Presently before the Court is defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule 56").  For the reasons set forth below, the defendants' motion is granted.

## *BACKGROUND*

The following facts, drawn from the parties' local Rule 56.1 statements, the pleadings, and prior decisions in this case, are undisputed unless otherwise noted.

*Procedural History*

In an Order dated June 13, 2008, this Court, adopting Magistrate Judge Orenstein's Report and Recommendation in its entirety, granted defendants' motion pursuant to Federal Rule of Civil Procedure 21 to sever into separate actions the claims of seven plaintiffs, including Henry, each of whom claimed that defendants had discriminated against him or her on the basis of race.  (*See* 06-CV-4757, Docket No. 64 (Memorandum and Order, dated June 13, 2008).)  In the same opinion, the Court also dismissed plaintiffs' Title VI claims in their entirety and their Title VII claims against all of the individual defendants, including defendants Perrotti and Bie.  (*Id.* at 14-15.)

*The Defendants*

NHCC "is a public benefit corporation created by the New York State legislature."  (Defs.' R. 56.1 Stmt. ¶ 1.)  "In or about September 19, 1999, the Public Authorities Law authorized NHCC's acquisition of certain assets in operation of Nassau County . . . relating to the provisions of healthcare services, including Nassau University Medical Center" ("NUMC").  (*Id.*)

Defendant Perrotti began working for NUMC as "Assistant Vice President of Finance on September 10, 2001," and two years later, "NHCC promoted him to Vice President of Finance."  (*Id.* ¶ 7.)

Defendant Bie has been the Chief Financial Officer of NHCC since July 2001, and "oversees[the] financial matters of NHCC."  (*Id.* ¶ 9.)

*Plaintiff's Employment at NUMC*

Plaintiff, an African-American woman, began working for NHCC as an Assistant Hospital Administrator II, a civil service position paid in accordance with a Civil Service Pay Grade 17 Classification.  (Defs.' R. 56.1 Stmt. ¶ 10.)  "The Assistant Administrator II's pay range varie[s] significantly because that Title [is] not a unionized position."  (*Id.* at ¶ 11.)  Plaintiff's starting salary was $39,721.00, from which it was increased several times: in December 1996, to $41,906.00; in December 1997, to 47,493; in January 2000, to $54,000; and finally in May 2003, to $57,000.  (*Id.*)

While plaintiff's job title is disputed − plaintiff classifies her title as Managed Care *Contractor*, and defendants classify it as Managed Care *Coordinator* − her essential duties are not disputed in that both parties agree that she was to "negotiate" and "re-

credentialize" managed care contracts.[1]  (*See id.* ¶ 12; Pl.'s R. 56.1 Stmt. ¶ 12.)  Plaintiff

was the only hospital employee who had this responsibility, which she undertook while in

the Department of Reimbursement, a three-member sub-department within the

Department of Finance.  (Defs.' R. 56.1 Stmt. ¶¶ 4; 14.)  All three members of the

Department of Reimbursement shared an office and reported directly to defendant

Perrotti, from whom plaintiff consistently received favorable performance evaluations.

(*Id.* ¶¶ 5; 20.)

*Plaintiff's Complaints to the Office of Diversity*

"Plaintiff first complained to NHCC that she believed she was not receiving

adequate compensation on July 12, 2000."  (Defs.' R. 56.1 Stmt. ¶ 36.)  Plaintiff "made

various [other] complaints to the Office of Diversity from 2000-2003."  (*Id.* ¶ 37.)  In

particular, "[o]n March 19, 2003, Plaintiff drafted a memo to the Office of Diversity

requesting a significantly larger salary increase than she had done so prior."  (*Id.*)

Plaintiff claims that the purpose of this memo was to "update [] the Office of Diversity

that Ms. Henry's responsibilities and duties had substantially increased since her original

complaint in July 2000, listing an extensive, yet non-exhaustive list of new functions

under her title."  (Pl.'s R. 56.1 Stmt. ¶ 37.)

According to plaintiff, Vance Shaw, an Affirmative Action Specialist working

within the Office of Diversity, addressed plaintiff's discrimination complaints with

Perrotti, although Shaw provides no details as to when these conversations took place.

---

[1] Plaintiff notes that her skills and educational background were applicable to the
demands of her position. Specifically she "possessed a Bachelor's and a Master's
degree…was bi-lingual -speaking fluent English and Spanish- and her skills were used to
translate documents and conversations."  (Pl.'s Mem. of Law in Opp'n to Mot. for
Summ. J. at 6.)

(Shaw Decl. ¶ 67, as Pl.'s Ex. C.)  Further, Perrotti denies knowledge of plaintiff having formally filed a complaint with the Office of Diversity.  (Perrotti Aff., as Defs.' Ex. M.)  Similarly, Shaw alleges that in 2003 he had conversations with defendant Bie regarding Henry, but provides no further details regarding these conversations.  (Shaw Decl. ¶ 66.)  Shaw does allege, however, that on June 18, 2003, one of his colleagues in the Office of Diversity "had a brief phone conversation with Defendant Perrotti discussing Plaintiff Henry's duties."  (*Id*. ¶ 64.)  Shaw also alleges that on that same day Henry, Perrotti, and Bie held a meeting regarding plaintiff's duties.  (*Id*. ¶ 65.)

*The Transfer*

On May 17, 2004, plaintiff was transferred to the Department of Academic Affairs.  (Defs.' R. 56.1 Stmt. ¶ 39.)  Defendants claim that plaintiff was "transferred to fill a vacancy left by the layoff[s]" at the hospital.  (*Id*.)  After the transfer, plaintiff's compensation, benefits, and work hours remained the same, though plaintiff claims her "assignments were diminished to ministerial tasks, like filing, scheduling, and answering phones."  ( *Id*.; Pl.'s Mem. of Law in Opp'n to Mot. for Summ. J. at 6.)

 "On May 18, 2004, Ms. Henry filed a charge of discrimination with the New York State Division of Human Rights alleging discrimination based on race, color and retaliation for opposing unlawful discrimination."  (Pl.'s R. 56.1 Counterstatement ¶ 29.)  On or about January 18, 2005, plaintiff was laid off from NHCC.  (*Id*. ¶ 30.)

*Plaintiff's Claims*

Plaintiff claims that defendants Perrotti, Bie, and Nassau Health Care Corporation discriminated against her on the basis of race and retaliated against her after she complained of the alleged discrimination.  In particular, she alleges "1) she did not

receive her required pay from Defendant NHCC;[2] 2) Defendant Perrotti and Defendant Bie attempted to minimize her work title, even though they never reduced her work responsibilities and she consistently received satisfactory reviews; 3) Defendant NHCC, Defendant Perrotti, and Defendant Bie, working together, transferred [her] from her highly demanding position in the Department of Finance, to a menial position located in the Department of Academic Affairs; 4) [her] responsibilities [were] materially diminished because she had no meaningful assignments to do upon her transfer; 5) [she] was terminated, or according to Defendants, 'laid off.' " (Pl.'s Mem. of Law in Opp'n to Mot. for Summ. J. at 4-5.)  Plaintiff further alleges that Perrotti and Bie transferred her from the Department of Finance to the Department of Academic Affairs in retaliation to discrimination complaints she made to the hospital's Office of Diversity between 2000 and 2003.  (*Id.* at 13-16.)

## DISCUSSION

### I.    Applicable Law and Legal Standards

Summary judgment pursuant to Rule 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law.  *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994).  The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v.*

---

[2] Plaintiff also claims that Perrotti and Bie denied her a salary increase based on racial prejudices, and asserts claims against them in their individual capacities.  (Sec. Am. Compl. ¶ 48, 84-86.)

*Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor.  *Chertkova v. Conn. Gen. Life Ins. Co*., 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there is a genuine issue of material fact to be tried. *Rule v. Brine, Inc*., 85 F.3d 1002, 1011 (2d Cir. 1996).  The non-movant must present more than a "scintilla of evidence," *Delaware & Hudson Ry. Co. v. Consol. Rail Corp*., 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts*," Aslanidis v. U.S. Lines, Inc*., 7 F.3d 1067, 1072 (2d Cir. 1993) (*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible."  *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

The district court, in considering a summary judgment motion, must also be "mindful of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions.  *Brady v. Town of Colchester*, 863

F.2d 205, 211 (2d Cir. 1988).  Where the non-moving party will bear the ultimate burden of proof on an issue at trial, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim.  *Id*. at 210-11.  Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that [her] claim is not implausible."  *Id*. at 211 (citing *Matsushita*, 475 U.S. at 587).

Summary judgment is generally inappropriate where questions of the defendant's state of mind are at issue, *Gelb v. Bd. of Elections of the City of N. Y.*, 224 F.3d 149, 157 (2d Cir. 2000), and should thus be granted with caution in employment discrimination cases.  *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994); *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 134 (2d Cir. 2000).  Nonetheless, "summary judgment remains available to reject discrimination claims in cases lacking genuine issues of material fact."  *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 40 (2d Cir. 1994).  "The summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion."  *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985).  "[T]he salutary purposes of summary judgment — avoiding protracted, expensive and harassing trials — apply no less to discrimination cases than to commercial or other areas of litigation."  *Id*. "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper."  *Gallo*, 22 F.3d at 1224.

## II.    Plaintiff's Discrimination Claim

**A.**   *Legal Standard*

In *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802-04, 93 S. Ct.

1817, 36 L. Ed. 2d 668 (1973), the Supreme Court first enunciated the now-familiar

"burden- shifting" formula used in analyzing Title VII employment discrimination claims

based on indirect or circumstantial evidence.  This standard was further refined in *Texas*

*Department of Community Affairs v. Burdine*, 450 U.S. 248, 252-53, 101 S. Ct. 1089, 67

L. Ed. 2d 207 (1981) and *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506-11, 113 S.

Ct. 2742, 125 L. Ed. 2d 407 (1993).  Under *McDonnell Douglas* and its progeny, a

plaintiff must first establish a *prima facie* case of discrimination by showing: (1) she

belonged to a protected class, (2) was qualified for the position she held or sought, and

(3) suffered an adverse employment action (4) under circumstances giving rise to an

inference of discriminatory intent.  *Terry v. Ashcroft*, 336 F.3d 128, 137-38 (2d Cir.

2003).  The burden of establishing a *prima facie* case of employment discrimination has

been described as "modest," *Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d

Cir. 1994), or even "minimal."  *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir.

2001).  It is a burden of production, not persuasion, and involves no credibility

assessments.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S. Ct.

2097, 147 L. Ed. 2d 105 (2000).

If the plaintiff establishes a *prima facie* case, the burden then shifts to the employer

to "articulate some legitimate, nondiscriminatory reason for [the adverse act]." *Leibowitz*

*v. Cornell Univ.*, 584 F.3d 487, 499 (2d Cir. 2009) (internal quotation marks omitted).

The employer's burden of showing a legitimate non-discriminatory reason for its actions

is not a particularly steep hurdle.  Federal courts do not have a "roving commission to

review business judgments," *Mont. v. First Fed. Sav. & Loan Ass'n of Rochester*, 869 F.2d 100, 106 (2d Cir. 1989) (quoting *Graefenhain v. Pabst Brewing Co.*, 827 F.2d 13, 21 n.8 (7th Cir. 1987)), and thus, "[e]vidence that an employer made a poor business judgment generally is insufficient to establish a question of fact as to the credibility of the employer's reasons." *Dister v. Cont'l Grp., Inc.*, 859 F.2d 1108, 1116 (2d Cir. 1988).

Should the employer satisfy its burden, the *McDonnell Douglas* framework and its presumptions and burdens disappear, leaving the sole remaining issue of "discrimination *vel non*." See *Reeves*, 530 U.S. at 143. To rebut an employer's proffered non-discriminatory rationale for its actions and withstand summary judgment, a plaintiff must present more than allegations that are "conclusory and unsupported by evidence of any weight." *Smith v. Am. Exp. Co.*, 853 F.2d 151, 154-55 (2d Cir. 1988). "To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases." *Meiri*, 759 F.2d at 998. Although intermediate evidentiary burdens shift back and forth under this framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves*, 530 U.S. at 143.

Finally, "the standards for proving discrimination under Section 296 of the New York Executive Law are the same as under Title VII." *Lucas v. South Nassau Cmtys. Hosp.*, 54 F. Supp. 2d 141, 146 (E.D.N.Y. 2008) (citing *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 479, 102 S. Ct. 1883, 72 L. Ed. 2d 262 (1982); *Stetson v. NYNEX Serv. Co.*, 995 F.2d 355, 360 (2d Cir. 1993) (plaintiff's claim under New York's Human Rights Law "is governed by the same standards as his federal claim"). "Accordingly, the

New York Executive Law inquiry is subsumed within the Title VII analysis." *Id.*

**B.** ***Application to Plaintiff's Discrimination Claim***

The Court begins its analysis by determining whether the plaintiff has met her initial burden of establishing a *prima facie* case of discrimination under Title VII. The first two prongs of that analysis, namely plaintiff's membership in a protected group and her qualification to perform her job, are undisputed here. (Defs.' Mem. of Law in Supp. of Mot. for Summ. J. at 16.) Therefore, the Court must consider only whether the plaintiff suffered an adverse employment action, and if so, whether discrimination can be inferred from the defendant's actions.

*Adverse Employment Actions*

The Supreme Court has stated that in order to be actionable under federal discrimination laws, an adverse employment action must be "tangible" or "material." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998); *see also Joseph v. Leavitt*, 465 F.3d 87, 90 (2d Cir. 2006) ("A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment.") (citation and internal quotation marks omitted). "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth*, 524 U.S. at 761. Materially adverse employment actions also include "a demotion evidenced by a decrease in wage or salary, a less distinguished title, . . . or other indices . . . unique to a particular situation." *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004) (citations and internal quotations omitted). However, a "bruised ego," a "demotion without change

in pay, benefits, duties, or prestige," or "reassignment to [a] more inconvenient job" are all insufficient to constitute a tangible or material adverse employment action. *Ellerth*, 524 U.S. at 761 (internal quotations and citations omitted).

The Second Circuit has spoken regarding the types of employment transfers which may constitute adverse action. The law dictates that "a transfer is an adverse employment action if it results in a change in responsibilities so significant as to constitute a setback to the plaintiff's career." *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 206 (2d Cir. 2006) (quoting *Galabya v. N. Y. City Bd. of Educ.*, 202 F.3d 636, 641 (2d Cir. 2000)). An adverse employment action also may be found where "the plaintiff was transferred from an elite unit to one that was less prestigious or where the transfer effected a radical change in [the] nature of the plaintiff's work." *Id.* (citations and internal quotation marks omitted). In addition, to be materially adverse, "a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* at 207 (citations and internal quotation marks omitted). "Because there are no bright-line rules, courts must pore over each case to determine whether the challenged employment action reaches the level of 'adverse.' " *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir. 1997).

In the instant case, plaintiff asserts that she suffered adverse employment actions because "1) she did not receive her required pay from Defendant NHCC; 2) Defendant Perrotti and Defendant Bie attempted to minimize her work title, even though they never reduced her work responsibilities and she consistently received satisfactory reviews; 3) Defendant NHCC, Defendant Perrotti, and Defendant Bie, working together, transferred [her] from her highly demanding position in the Department of Finance, to a menial

position located in the Department of Academic Affairs; 4) [her] responsibilities [were] materially diminished because she had no meaningful assignments to do upon her transfer; [and] 5) [she] was terminated, or according to Defendants, 'laid off.' "[3]  (Pl.'s Mem. of Law in Opp'n to Mot. for Summ. J. at 4-5.)

Plaintiff's claim that defendants attempted to minimize her title is unavailing. Plaintiff argues that her title was "Managed Care Coordinator," as opposed to "Managed Care Contractor," however, both parties agree as to the scope of plaintiff's duties.  Any diminution in prestige arising from the use of "coordinator" rather than "contractor" lacks the severity required of an adverse employment action under the law.  *See Ellerth*, 524 U.S. at 761 (finding that "demotion without change in pay, benefits, duties, or prestige" is insufficient to constitute a tangible or material adverse employment action).

In contrast, plaintiff's transfer to the Department of Academic Affairs and her allegations that this transfer resulted in diminished responsibilities raises a triable issue as to whether that action materially altered the terms and conditions of her employment in an adverse manner.  According to plaintiff, the duties of her new position entailed mainly clerical tasks, whereas previously she was responsible for negotiating managed care contracts.  (Pl.'s Mem. of Law in Opp'n to Mot. for Summ. J. at 6.)  Furthermore, the new position did not require her educational background and skills.  (*Id.*)  This change in responsibilities may be considered so severe as to constitute a setback in plaintiff's career.  *See Kessler*, 461 F.3d at 209 (finding that plaintiff created a genuine triable issue on the question of adverse action because he retained his title in name only and lost all

---

[3] Assuming the lay-off constituted an adverse employment action, plaintiff has failed to offer any proof that the action was motivated by discriminatory intent, and accordingly cannot assert that action to establish a *prima facie* showing.  *See infra* pp. 12-17.

job responsibilities after his transfer to a different office); *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008) (finding that employee's transfer from working in pharmacy to working in parking lot resulted in "significantly diminished material responsibilities"). Accordingly, plaintiff has raised a triable issue as to whether her transfer to the Academic Affairs Department constituted an adverse employment action.[4]

*Inference of Discrimination*

A Title VII plaintiff may establish the last element of the *prima facie* case in a number of different ways depending on the specific facts of the case. *See Abdu-Brisson v. Delta Air- Lines, Inc.*, 239 F.3d 456, 468 (2d Cir. 2001). Here, plaintiff claims that evidence of disparate treatment and a hostile work environment raise an inference of discriminatory intent.

Under a disparate treatment theory, a plaintiff can raise an inference of discrimination "by showing that the employer subjected [her] to disparate treatment, that is, treated [her] less favorably than a similarly situated employee outside [her] protected group." *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000). Plaintiff claims there are "two viable sets of employees she could reasonably be compared to in showing disparate treatment: 1) her colleagues in the Finance Executive Area and 2) the other Assistant Hospital Administrators." (Pl.'s Mem. of Law in Opp'n to Mot. for Summ. J. at 8.)

---

[4] The Court assumes that plaintiff has also created triable issues with regard to whether she suffered adverse actions because she was not adequately compensated and was terminated from her job. Nevertheless, as will be seen below, plaintiff cannot make out a *prima facie* case because none of the alleged adverse employment actions occurred under circumstances giving rise to an inference of discrimination.

In comparing herself to her colleagues in the Finance Department, plaintiff claims that she was treated differently because she was "1) the only African-American in her department and shared an office in the Department of Finance with two [c]aucasian employees; 2) was purposely excluded from meetings she customarily attended prior to Defendant Perrotti's and Defendant Bie's arrival, while all [c]aucasian employees in her area were granted access to attend by Defendant Perrotti; 3) was the only one in her area yelled at and humiliated frequently by Defendant Perrotti in front of others; 4) was the only one in the Finance Executive Area asked to perform menial tasks when Defendant Perrotti's clerk did not complete her tasks; and 5) was the only one whom Defendant Perrotti did not want to speak to about work related issues." (Pl.'s Mem. of Law in Opp'n to Mot. for Summ. J. at 8.)

Plaintiff's claim must fail because she cannot establish a *prima* facie case that she was similarly situated to her colleagues in the Finance Department. The only basis that plaintiff offers to establish that she was similarly situated to others in her department is that both she and her colleagues had complex duties relating to financial matters and reported to defendant Perrotti. (Pl.'s Mem. of Law in Opp'n to Mot. for Summ. J. at 8-9.) This basis is far too general to support the conclusion that they were similarly situated. *See Roa v. Mineta*, 51 F. App'x 896, 899 (2d Cir. 2002) (holding that two employees who worked in same department and reported to same supervisor were not similarly situated because their duties and responsibilities were materially different). Furthermore, plaintiff's own admission that her function was "[a]bsolutely not" the same as the function of one of her departmental colleagues further belies the notion that she was

similarly situated to those in her department.  (Henry Dep. at 59-61.)  Accordingly, plaintiff's claim is insufficient to create an inference of disparate treatment.

Similarly, plaintiff's claim that she was similarly situated to other Assistant Hospital Administrator IIs is deficient because plaintiff has failed to produce any evidence explaining how she held similar responsibilities to the other Assistant Administrator IIs.  Although an identical illustration of duties and responsibilities is not necessary, here, plaintiff has failed to allege any facts demonstrating even a "reasonably close resemblance of the facts and circumstances" between of her and her comparators. *Graham*, 230 F.3d at 40.  Moreover, plaintiff even admits that the scope of her duties varied significantly from the other Hospital Administrator IIs to whom she seeks to compare herself.  For instance, plaintiff concedes she did not oversee other employees, whereas others with her civil service title were responsible for entire departments with multiple employees.  (Henry Dep. at 62; Pl.'s Mem. of Law in Opp'n to Mot. for Summ. J. at 9; Perrotti Dep., at 33-40, as Defs.' Ex. D.)

Plaintiff's allegation that she can demonstrate disparate treatment "through evidence of a hostile work environment" also must fail.  (Pl.'s Mem. of Law in Opp'n to Mot. for Summ. J. at 10.)  In order to establish a hostile work environment claim, a plaintiff must prove: "(1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of his or her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile work environment to the employer." *Mack v. Otis Elevator Co.*, 326 F.3d 116, 122 (2d Cir. 2003) (internal quotation marks and brackets omitted).  "This test has objective and subjective elements: the misconduct shown must be 'severe or

pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." *Alfano v. Cosstello*, 294 F.3d 365, 374 (2d Cir. 2002) (quoting *Harris v. Forklift Sys., Inc.*, 501 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)); *see also Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006) ("Plaintiff must show not only that she subjectively perceived the environment to be abusive, but also that the environment was objectively hostile and abusive.").

"Isolated incidents typically do not rise to the level of a hostile work environment unless they are 'of sufficient severity' to 'alter the terms and conditions of employment as to create such an environment.' " *Demoret*, 451 F.3d at 149 (quoting *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 227 (2d Cir. 2004)).  However, "[t]here is no fixed number of incidents that a plaintiff must endure in order to establish a hostile work environment," and instead, courts are to "view the circumstances in their totality, examining the nature, severity, and frequency of the conduct." *Alfano*, 294 F.3d at 379.  What is necessary is that plaintiff establish a link between the actions by defendants and plaintiff's membership in a protected class.  *Id*. at 374; *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001).

In support of her claim plaintiff alleges that her "work environment included unjustifiable yelling from Defendant Perrotti, comments by Defendant Perrotti about the non-necessity of Black History Month at the Defendant Hospital, and his overt disdain for the discrimination cases which arose at Defendant NHCC."  (Pl.'s Mem. of Law in Opp'n to Mot. for Summ. J. at 10.)   Here, plaintiff seems to ignore the requirement that she establish a link between the defendants' alleged actions and her membership in a

protected class.  For example, she alleges only one occasion on which Perrotti yelled at her, but fails to allege how this incident was related to her race.  (Henry Dep., pp.82-83.)  Similarly, plaintiff fails to link the fact that Perrotti "was tired of" discrimination cases in general, (Henry Decl. ¶ 22, as Pl.'s Ex. B), to any negativity toward African Americans specifically.   In addition, plaintiff's allegation that on one occasion Perrotti made a negative remark about Black History Month, (Henry Decl. ¶ 21), is not of sufficient severity so as to alter the conditions of plaintiff's working environment.  Moreover, when examining these occurrences collectively, the situation does not exhibit conduct that is so severe or recurrent enough to establish a workplace permeated with discriminatory intimidation.  *See Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) ("[T]he misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,'… [a]s a general rule, incidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.' ") (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)).  Accordingly, plaintiff's allegation of a hostile work environment must fail.

For the reasons stated above, plaintiff has failed to establish the final element of her *prima faci*e case in that she has not presented sufficient evidence that any alleged adverse employment actions occurred under circumstances giving rise to an inference of discriminatory intent.  Because plaintiff has failed to satisfy her burden of establishing a *prima facie* case, this Court will not shift the burden over to the employer to offer a legitimate, non-discriminatory reason for its actions.  *See Patterson v. Cnty. of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004) ("Once the plaintiff satisfies his initial minimal burden, the burden of production shifts to the employer") (internal quotation marks omitted).

Therefore, the Court dismisses plaintiff's Title VII discrimination claims.

### III.  Plaintiff's Retaliation Claim

#### A.  *Legal Standard*

Section 704(a) of Title VII makes it unlawful to retaliate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  *Deravin v. Kerik*, 335 F.3d 195, 203 (2d Cir. 2003) (citing 42 U.S.C. § 2000e-3(a)).  "In order to present a prima facie case of retaliation under Title VII . . ., a plaintiff must adduce evidence sufficient to permit a rational trier of fact to find [1] that he engaged in protected participation or opposition under Title VII . . ., [2] that the employer was aware of this activity," and "[3] that the employer took adverse action against the plaintiff." *Kessler*, 461 F.3d at 205-06 (internal quotation omitted).  In addition, the Supreme Court recently clarified the causation standard required by § 704(a) stating, "a plaintiff making a retaliation claim under § 2000e-3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer," as distinct from "a motivating factor," which had previously been the standard in the Second Circuit. *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 2013 WL 3155234, *16 (June 24, 2013); *Kessler*, 461 F.3d at 206.

Claims of retaliation pursuant to Title VII are analyzed according to the burden-shifting framework set forth in *McDonnell Douglas*. *See Terry*, 336 F.3d at 141.  Once the employee has established a *prima facie* case, the employer "must proffer a legitimate, non-discriminatory reason for the adverse action.  If it does so, then the burden shifts

back to the [employee] to demonstrate pretext."  *Slattery v. Swiss Reinsurance. Am.*

*Corp*., 248 F.3d 87, 94-95 (2d Cir. 2001).

**B.     *Application to Plaintiff's Retaliation Claim***

        Defendant does not dispute that plaintiff engaged in activity protected under Title

VII when she made several complaints to the Office of Diversity beginning in 2000.

(Defs.' Reply Mem. in Supp. at 7.)  Plaintiff, however, still has not established the

requisite causal nexus between her complaints to the Office of Diversity and her transfer

to the Department of Academic Affairs.  While plaintiff claims that Vance Shaw had

conversations with Perrotti and Bie regarding her complaints, the last conversation

regarding plaintiff's complaints that Shaw alleges with any specificity occurred in June of

2003.  (*See* Shaw Decl. ¶¶ 64-67.)  Plaintiff is unable to establish causation because this

incident occurred nearly a year before she was transferred to the Department of

Academic affairs in 2004.[5]  *See Smith v. Town of Hempstead Dep't of Sanitation Sanitary*

*Dist. No. 2*, 798 F. Supp. 2d 443, 459 (E.D.N.Y. 2011) (holding a one year lapse between

protected activity and alleged retaliation is too attenuated to support retaliation claim);

*see also Thomas v. City of New York*, 11 CIV. 5978 BMC, 2013 WL 3753557, at *11

(E.D.N.Y. July 12, 2013) ("Courts in this Circuit have varied widely as to the length of

time between the protected activity and the adverse action that is sufficient to break the

chain of causation as a matter of law…*but it is the rare case that finds an issue of fact as*

*to causation when more than a year rather than months have gone by*.") (emphasis

--------

[5] This notion applies equally to defendants' act of laying plaintiff off in January,
2005, which was nearly two years after her last alleged discrimination complaint, and
over seven months after she filed a complaint with the New York State Division of
Human Rights in May, 2004.  *See Cunningham v. Consol. Edison Inc.*, 2006 WL 842914,
at * 20 (finding that lag of seven months is "too long for a causal inference").

added).  Therefore, plaintiff's retaliation claim is dismissed.

## IV.  Plaintiff's 42 U.S.C. § 1981 Claims

42 U.S.C. § 1981 provides that all persons within the jurisdiction of the United States shall have the right "to make and enforce contracts."  This section prohibits discrimination "with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment."  *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 224 (2d. Cir. 2004) (citing *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 68-69 (2d Cir. 2000)).

The *McDonnell Douglas* analysis applies to both Title VII discrimination claims and claims under § 1981.  *Johnson*, F. Supp. 2d at 605.  As a result, because plaintiff has not provided sufficient evidence to meet even the minimal burden of establishing a *prima facie* claim of discrimination under Title VII, her claims under § 1981 must fail as well.  *See id*. (quoting *Patterson*, 375 F.3d at 225) ("Most of the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of § 1981 . . . and the factors justifying summary judgment dismissing Patterson's Title VII claim against the municipal defendants for termination of his employment equally support the summary dismissal of his claims for termination brought under 42 U.S.C. §§ 1981 and 1983.").

Similarly, retaliation claims under § 1981 are generally analyzed in the same manner as under Title VII.  *Acosta v. City of New York*, No. 11 Civ. 856(KBF), 2012 WL 1506954, at *8 (S.D.N.Y. Apr. 26, 2012) ("Claims of retaliation under [Title VII and § 1981] are generally analyzed in the same way, with the same standards of liability.").  Because this Court has dismissed plaintiff's retaliation claim, her § 1981

retaliation claim is also dismissed.

**V.      Plaintiff's 42 U.S.C. § 1983 Claims**

Plaintiff concedes that her equal protection claim under the Fourteenth Amendment "parallels her Title VII claim" and that "the two must stand or fall together." (Pl.'s Mem. of Law in Opp'n to Mot. for Summ. J. at  18) (citing *Feingold*, 366 F.3d at 159)).  Here, because plaintiff's Title VII claim was insufficient it follows that her Fourteenth Amendment equal protection claim, as exercised under 42 U.S.C. § 1983, is also without merit, and is therefore dismissed.

In addition, to the extent plaintiff's § 1983 claim is predicated on a violation of the Due Process Clause of the Fourteenth Amendment, her claim is dismissed as she has not alleged any evidence that she was deprived of a property or liberty interest.  *See Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998) ("To state a Section 1983 claim [premised upon a due process violation], a plaintiff must demonstrate that he possessed a protected liberty or property interest, and that he was deprived of that interest without due process.").[6]

---

[6] Count IV of the complaint alleges that defendants violated plaintiff's First Amendment rights of free speech and free association.  (Sec. Am. Compl. ¶ 86.) However, plaintiff subsequently withdrew her First Amendment claims in her brief. (Pl.'s Mem. of Law in Opp'n to Mot. for Summ. J. at  1.)  Accordingly, these claims are dismissed.

*CONCLUSION*

For the foregoing reasons, defendants' motion for summary judgment pursuant to

Rule 56 is granted in its entirety.  Plaintiff's claims under 42 U.S.C. § 2000(e) et. seq.

(Title VII), 42 U.S.C. §§ 1981 and 1983, and New York's Human Rights Law, Executive

Law § 296 are dismissed.

**SO ORDERED.**

Dated:      Central Islip, New York
            October 7, 2013

                                          _____/s/_____

                                          Denis R. Hurley
                                          United States District Judge